Carolyn Masten HUMES, Daniel E. Masten, and Arthur Robert Masten, Plaintiffs,

v.

CHARLES H. WEST FARMS, INC., a Delaware corporation, Defendant/Third Party Plaintiff,

v.

Estate Of Raymond W. Masten and Carolyn M. Humes as Executrix and all Beneficiaries thereof, and the Estate of Mildred M. Bach and all Executors/Administrators/Beneficiaries thereof, Third Party Defendants,

and

William M. Chasanov, Esquire; Roy S. Shiels, Esquire; A. Richard Barros, Esquire; and Brown Shiels & O'Brien, LLC, as successor in interest to the law firm of Brown Shiels & Barros, Third Party Defendants/Fourth Party Plaintiffs,

v.

Estate of Raymond W. Masten, and Carolyn M. Humes as Executrix and all Beneficiaries thereof, and the Estate of Mildred M. Bach and all Executors/Administrators/Beneficiaries thereof, Fourth Party Defendants.

C.A. No. 05C–08–042 WLW.

Superior Court of Delaware, Kent County.

Submitted: March 30, 2007.
Decided: Sept. 28, 2007.

Robert A. Penza, Esquire and Peter M. Sweeney, Esquire of Gordon Fournaris & Mammarella, P.A., Wilmington, DE, for the Plaintiffs/Fourth-Party Defendants.

R. Brandon Jones, Esquire and Sean M. Lynn, Esquire of Hudson Jones Jaywork & Fisher, Dover, DE, co-counsel for the Defendant/Third-Party Plaintiff Charles H. West Farms, Inc.

Collins J. Seitz, Jr., Esquire, Gregory J. Weinig, Esquire and Scott E. Swenson, Esquire of Connolly Bove Lodge & Hutz, LLP, Wilmington, DE, co-counsel for the Defendant/Third-Party Plaintiff Charles H. West Farms, Inc.

Jeffrey M. Weiner, Esquire of Law Offices of Jeffrey M. Weiner, P.A., Wilmington, DE, for Third-Party Defendants/Fourth-Party Plaintiffs William M. Chasanov, Esquire, Roy S. Shiels, Esquire, A. Richard Barros, Esquire, and Brown Shiels & O'Brien, LLC as successor in interest to the law firm of Brown Shiels & Barros.

## OPINION

WITHAM, R.J.

Plaintiffs Carolyn Masten Humes, Daniel R. Masten and A. Robert Masten, filed an ejectment action in this Court arguing that they are entitled to legal title (and immediate possession) of 15/36ths Interest in the Masten Farm ("Masten Farm" or "the property"), which is at issue in this case. Defendant Charles H. West Farms, Inc. ("West Farms") is currently in possession of the Masten Farm, and the Defendant argues that it holds good legal title to the property. In denying the Defendant's previous Motion to Appoint this Judge as Vice–Chancellor, the Court stayed all contingent matters in this case pending resolution of Plaintiffs' ejectment action. Plaintiffs and the Defendant filed Cross–Motions for Summary Judgment, which are presently before the Court. The Court has reviewed the Parties' extensive briefings, and the matter is now ripe for the Court's consideration.

### Statement of Facts

The *salient* facts are as follows: The last will and testament of Daniel Burton Masten, Plaintiffs' Grandfather, conveyed a Life Estate in one half of his Real Property and one half of his Residuary Estate to each of his two children, Raymond W. Masten and Mildred S. Bach.[1] The Testator further bequeathed an equal Remainder Interest in both his Real Property and Residual Estate to each of his three grandchildren (the Plaintiffs), which would become possessory upon the deaths of Raymond Masten and Mildred Bach.

The Testator devised all Real Estate in which he died seized in Item Second of his Last Will and Testament (the "Will"). The Testator devised his Residual Estate in Item Third of his Last Will and Testament. Item Third expressly granted Raymond Masten and Mildred Bach, as Co-executors of the Testator's estate, a power of sale over any or all of the principal of the Residue of his estate, if, in their discretion, they deemed it to be in the best interest of the estate. The proceeds of any such sale, under Item Third, were required to be re-invested with the income to be distributed as discussed above (principal to the Plaintiffs). Item Second, the clause devising the Testator's Real Property, had no express language regarding the Co-executors' ability to sell said Real Property.

Daniel Burton Masten died owning three parcels of Real Property. The Properties will be referred to for the sake of simplicity as (1) the Milford Residence, (2) the Milford Store Property and (3) the Masten Farm, which is the property presently in issue. The Testator's Will did not distinguish between the separate Properties and

---

1. Daniel Burton Masten's Will is dated September 22, 1961. Raymond and Mildred were the Co-executors of Daniel Burton Masten's estate and will collectively be referred to as the "Co-executors" throughout the Court's decision.

only referred to his Real Estate in general terms.

Daniel Burton Masten died on June 24, 1962. At the time of Daniel Burton Masten's death, a fair argument can be made that the Testator intended to grant the Co-executors the power to sell the Residual Estate but not the Real Property when looking at the face of the Testator's Will, because Item Second (the Real Estate provision) lacked the express language regarding the Co-executor's power of sale that was contained in Item Third (the provision devising the Residual Estate). However, Raymond and Mildred sold the Milford Residence in fee simple to Eivind and Anna Stene on October 25, 1962, only a few months after their father's death.[2]

The following year, on September 26, 1963, Raymond and Mildred signed an agreement further detailing the 1962 sale of the Milford Residence. A trust was created by the Co-executors, and the proceeds from the sale of the Testator's Real Property (the Milford Residence) were added to the trust corpus. The Co-executors maintained their life interest (or income interest) in the trust, and the Plaintiffs remained the principal beneficiaries (or remainder beneficiaries) of the trust.[3] It appears that the Co-executors created the trust, because Item Third of the Testator's Will allowed the Co-executors to sell the principal of the Residual Estate and then reinvest the proceeds. It further appears that the Co-executors believed that their power of sale extended to all assets, including the Real Property, of the Testator, and that when the Co-executors sold any of the estate assets, the proceeds should be deposited in trust with the beneficiaries maintaining identical interests. Raymond and Mildred assumed the role of Trustees of the trust.[4]

The next occurrence is integral in West Farm's claim to legal title. In 1964, Raymond and Mildred petitioned the Court of Chancery for Appointment of Successor Trustees. Basically, Raymond and Mildred no longer wanted to act as Trustees of the trust, and they petitioned the Court of Chancery to appoint Farmers Bank as the Successor Trustee.[5] The substance of the Chancery Court's final Order, dated September 30, 1964, is somewhat limited in scope.[6] The Order of the Court of Chancery expressly appointed Farmers Bank as successor trustee and Attorney Herman Brown's[7] two employees as appraisers. The significance of the Chancery Court's Order lies in what the Court was presented at the time the Court granted the ap-

2. The public-record deed stated that Raymond and Mildred's ability to sell the Milford Residence was granted under Daniel Burton Masten's Will. Specifically the deed stated: "Raymond W. Masten and Mildred S. Bach having been given authority to sell any and all of the real estate of the deceased as Executors under said Will."

3. The asset (Milford Residence) transformed from Real Property to cash and a mortgage when the Property was sold by the Co-executors, but all of the beneficiaries kept the same interest in the proceeds of the sale as they had in the Property itself.

4. Raymond and Mildred assumed the roles of Trustees based on their status as Co-executors of their father's estate.

5. The Court of Chancery issued an initial order on September 16, 1964 setting a September 30, 1964 hearing date and ordering that Notice of the hearing and a copy of the Petition be sent to Plaintiffs (the Remainder beneficiaries). The record establishes that this was done per the Court's request.

6. No objections were filed to the Petition for appointment of successor trustees.

7. Herman Brown, Esquire was the former senior partner of the law firm of Brown Shiels & Barros.

pointment of a successor trustee. The Court of Chancery had before it, at that time, the Petition of the Co-executors, including four exhibits: the Will, the 1963 agreement of the Co-executors, the resignation of Raymond and Mildred as Trustees, and a trust inventory, which included the proceeds (cash and mortgage) from the 1962 sale of the Milford Residence.

Raymond and Mildred's petition to the Court stated: "that the authority given by the last cited portion of the last will and testament [referring to Item Third] of the said Daniel Burton Masten, your Petitioners have sold a certain piece of **Real Estate** belonging to the estate of said Daniel Burton Masten for the sum of . . ."[8] The Chancery Court was also presented with the 1963 agreement, as an exhibit to the Petition, which explained the circumstances surrounding the 1962 sale of the Milford Residence, and a trust inventory that included the proceeds of said sale. It appears that the Court of Chancery took no issue with the 1962 sale of the Testator's Real Property (the Milford Residence) by the Co-executors, and issued the Court's final Order granting an appointment of successor trustees.

In 1972, Raymond and Mildred sold the second parcel of Real Property from the estate of Daniel Burton Masten (the Milford Store Property). The Co-executors added the sale proceeds from the 1972 sale of the Milford Store Property to the trust corpus, as they had done previously in connection with the 1962 sale of the Milford Residence.[9]

Finally, the Co-executors decided to sell the third and final parcel of Real Property that remained in the estate of Daniel Burton Masten. The 1976 sale of the Masten Farm is the crux of the present action. Raymond Masten offered to sell the whole Masten Farm to Defendant West Farms for $300,000 in 1976, and the Defendant agreed. As discussed earlier, Daniel Burton Masten died seized of a 15/36ths Interest in the Masten Farm. Therefore, Raymond Masten sought and received consent from his relatives who owned the remaining 21/36ths Interest to sell their collective interests in the farm so that an undivided interest in the whole Farm could be sold to the Defendant. The Parties went to Settlement on April 30, 1976.[10] The proceeds of the sale of Daniel Burton Masten's Estate were exactly 15/36ths of the $300,000 sale price, which totaled $125,000. As with the two previous sales of Real Property by the Co-executors, one half of the Estate's net proceeds from sale, after taxes, were deposited into each Trust.

8. Emphasis added. Again, this evidences the Co-executors belief that they sold the Testator's Real Property pursuant to the intent of the Testator. The Court also notes that Daniel Burton Masten's Will was before the Court of Chancery for its review.

9. Farmers bank eventually split the Trust into two equal shares, one each for Raymond (the "Raymond Trust") and Mildred (the "Mildred Trust"). The Plaintiffs remained the principal beneficiaries of both trusts.

10. Plaintiffs argue that Raymond and Mildred did not sign the 1976 deed in their capacity as Co-executors of the Estate of Daniel Burton Masten, which they had done in connection with the sales of the Milford Residence and the Milford Store Property. The Court finds that Raymond and Mildred did sign the 1976 deed in their capacity as Co-executors evidenced by Raymond's signature on the settlement sheet, which read: "Daniel Burton Masten, Estate/Raymond W. Masten," and the fact that the Co-executors deposited the proceeds in trust as part of the Decedent's estate. Also, the term "fee simple" was not used in the any of the three deeds. However, upon examination, the intent to convey the properties in fee simple appears in all three deeds, and the Court finds that the deeds attempted to convey fee simple title to the Real Properties.

Upon the deaths of Raymond and Mildred, the trust principals were distributed to each of the three Plaintiffs equally.[11] Therefore, Plaintiffs fully received the proceeds that were realized from the 1976 sale of the Masten Farm to the Defendant, via their trust distributions.

## Discussion

■ An action in ejectment determines legal title to property.[12] An ejectment action is within the common law jurisdiction of the Superior Court.[13] A plaintiff must prove two elements in an action for ejectment: "(1) that it is out of possession; and (2) that it is entitled to possession."[14]

There is no dispute that the Property subject to the present action for ejectment is in possession of Defendant West Farms. Therefore, Plaintiffs must prove that they are entitled to possession of the Masten Farm to prevail on their ejectment action. The Court must decide whether legal title passed to West Farms when they purchased the Masten Farm in 1976.[15] The Court must focus on the implications that the 1964 Court of Chancery Order had on the Co-executors' ability to convey good legal title to the Masten Farm to Defendant West Farms.

■ If the Court assumes for argument purposes that the Testator's Will, standing alone and on its face, evidences his intent that his Real Property was not to be sold by the Co-executors, then the Co-executor/Life Tenants (Raymond and Mildred) could only convey their Life Interests in the Property to the Defendant, because they would be unable to convey an interest in the Property greater than what they held.[16] However, even operating under this assumption, the Co-executors could convey good legal title to the Masten Farm to the Defendant, if the Co-executors were implicitly granted the power of sale over the Decedent's Real Property as a result of the Court of Chancery's 1964 Order.

The Court finds that Raymond and Mildred, as Co-executors of their father's estate, passed good legal title to the 15/36ths Interest in the Masten Farm at issue in this action to Defendant West Farms; when the Defendant purchased the whole Masten Farm for $300,000 in 1976. Whether consistent with the Testator's Intent or not, the Co-executors sold the first of three parcels of Real Property in the Decedent's estate in 1962. The proceeds of that sale were put into trust, and Plaintiffs remained the principal beneficiaries of the trust. In reviewing the Petition for Appointment of a Successor Trustee, the Court of Chancery had before it information detailing the Co-executors' 1962 sale of the estate's Real Property (the Milford Residence). The information presented evidenced the Co-executors' belief that they sold the Milford Residence pursuant to the intentions of the Testator, their

11. The Mildred Trust was distributed outright to the Plaintiffs in 1988. All three Plaintiffs received $27,235.95 or $27,235.96 from the Mildred Trust. The Raymond Trust was distributed outright to the Plaintiffs following Raymond's death in 2001. Plaintiffs each received $169,874.20 from the Raymond Trust.

12. 10 *Del. C.* § 6701.

13. *Humes v. Charles H. West Farms, Inc.*, 2006 WL 337038, *1 (Del.Super.).

14. *Centreville Veterinary Hosp., Inc. v. Butler–Baird*, 2007 WL 1965538, *9 (Del.Ch.).

15. Plaintiffs take no issue in this action with the sale of either the Milford Residence or the Milford Store Property.

16. The Life Tenants would need the Remainder Beneficiaries (Plaintiffs) to join in on the transaction in order to convey the Property in fee simple, because then the Defendant would receive the Life Interests and Remainder Interests in the Property.

Father. The Court was also provided the Will of Daniel Burton Masten for its consideration.

Although the Court of Chancery's Order was limited in scope (as discussed above), the Court implicitly blessed the sale of the estate's Real Property by the Co-executors when the Court granted the Petition for Appointment of a Successor Trustee.[17] The Chancery Court took absolutely no issue with the Co-executors' 1962 sale of the Real Property, and the Will and sales information for the Milford Residence was clearly before the Court at that time. The Court granted the appointment of a successor trustee for the very trust that included proceeds from the sale of the Estate's Real Property. It is to be noted that no objections were raised by any party on notice of the proceeding. Therefore, the Court of Chancery implicitly approved Raymond and Mildred's ability to sell the Estate's Real Property, which included adding the proceeds of such a sale into the trust corpus with Plaintiffs maintaining their remainder interests in the trust.

This implied approval encompassed the Co-executors' subsequent sales of the Estate's Real Property in 1972 and 1976 as well.[18] The Milford Store Property was sold in 1972. West Farms purchased the Masten Farm in 1976, and the Defendant remains in possession of the Property today. The proceeds from both Real Prop-

erty sales were put into trust (in addition to proceeds from the first sale), and Plaintiffs were paid their remainder interests in said trusts upon the deaths of Raymond and Mildred. Therefore, Plaintiffs received their remainder interests in the proceeds of the estate Real Property Sales, including their remainder interests in the proceeds from the sale of the Masten Farm.

Viewing the facts in a light most favorable to the non-moving Plaintiffs, the Court finds that Defendant West Farms has good legal title to the Masten Farm as a matter of law. The Court is not opining on any of the previously stayed matters. Many of those matters may now be moot. However, the parties are entitled to bring any relevant matters to the Court's attention.

Therefore, Plaintiffs cannot succeed on their action for ejectment. For the reasons state above, Defendant West Farms' Motion for Summary Judgment is *granted,* and Plaintiffs' Cross Motion for Summary Judgment is *denied.*

IT IS SO ORDERED.

---

**17.** The Court's ruling is based on the unique set of facts in the case *sub judice.*

**18.** The Court notes that the Co-executors must have been under the impression that

they were free to sell the Estate's Real Property after the Court of Chancery's Order, as they were already under such an assumption, and the Court took no issue with the 1962 sale.